### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH D. TUMMARELLO, | : | CIVIL ACTION NO. |
| Plaintiff, | : | |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| BOROUGH OF QUAKERTOWN; | : | |
| JOHN DOE; | : | |
| in his individual capacity, | : | |
| Defendants. | : | |

### COMPLAINT
### UNDER 42 U.S.C. § 1983

### PRELIMINARY STATEMENT

1. Plaintiff Joseph D. Tummarello ("Plaintiff" or "Mr. Tummarello"), by and through his attorneys, Levin & Zeiger, LLP, brings this civil action against the Borough of Quakertown and the individually named Defendant officers for violations of his constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution, as enforced through 42 U.S.C. § 1983.

2. This action arises from an incident on June 4, 2025, in Quakertown, Bucks County, Pennsylvania, during which Defendant officers used excessive and unreasonable force against Mr. Tummarello during his arrest, causing him to suffer a traumatic head injury, severe concussion and a 6-centimeter forehead laceration requiring 11 sutures. Body-camera footage of the incident exists and will confirm Plaintiff's account of the events.

3. Mr. Tummarello was cooperating with officers at the time of the incident. Despite his compliance, one of the Defendant officers slammed Mr. Tummarello into the side of an electrical utility truck, pressing his forearm against Mr. Tummarello's head and

1

driving his skull into the metal surface of the truck. This use of force was objectively unreasonable, gratuitous, and constitutionally excessive.

4. Mr. Tummarello's subsequent guilty plea to charges of terroristic threats and harassment, offenses based entirely on emails sent prior to the arrest, does not bar this action. Mr. Tummarello brings the instant action on a theory of an excessive force claim, challenging the manner of the arrest, not the validity of any underlying conviction. This claim is fully consistent with the *Heck* doctrine, as explained more fully below.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because all events giving rise to this action occurred in Quakertown, Bucks County, Pennsylvania, which is within the Eastern District of Pennsylvania.

## PARTIES

7. Plaintiff Joseph D. Tummarello is an adult individual, born October 29, 1985, residing in Levittown, Pennsylvania 19054. At all times relevant hereto, Plaintiff was a citizen of the United States and the Commonwealth of Pennsylvania.

8. Defendant Borough of Quakertown ("the Borough") is a municipal corporation organized under the laws of the Commonwealth of Pennsylvania, located in Bucks County. The Borough is responsible for the policies, practices, customs, and training of the Quakertown Police Department and its officers. The Borough is a "person"

2

subject to suit under 42 U.S.C. § 1983. The Quakertown Police Department is not a separate legal entity from the Borough and is therefore not named as a separate defendant.

9. Defendant Officer John Doe is a police officer employed by the Quakertown Police Department who, at all times relevant hereto, was acting under color of state law and within the scope of his employment. The true name of this Defendant will be substituted upon discovery, including review of body-camera footage and police reports. Defendant Officer John Doe is sued in both his individual and official capacities.

10. At all times relevant hereto, each individual Defendant was acting under color of state law, within the course and scope of his or her duties as an employee and/or agent of the Borough of Quakertown and/or the Quakertown Police Department.

**STATEMENT OF FACTS**

**A. Background**

11. In the spring of 2025, Mr. Tummarello was involved in an active Children and Youth case in Bucks County concerning custody of his daughter. During this period, Mr. Tummarello sent a series of emails that led to criminal charges being filed against him.

12. On June 4, 2025, a criminal complaint was filed against Mr. Tummarello by Bucks County Detective Timothy Johnson, and officers initiated contact with him at his residence at 44 S. 14th Street, Apartment 7, Quakertown, Bucks County, Pennsylvania 18951, for purposes of effectuating his arrest.

**B. The Excessive Force Incident of June 4, 2025**

3

13. During the encounter of the arrest on June 4, 2025, Mr. Tummarello was cooperative with the officers and did not resist arrest or pose an immediate threat to the safety of the officers or others.

14. Despite Mr. Tummarello's cooperation, one of the Defendant officers forcefully slammed Mr. Tummarello into the side of an electrical utility truck.

15. The Defendant officer then pressed his forearm against Mr. Tummarello's head and drove Mr. Tummarello's skull into the metal surface of the truck with significant force.

16. As a direct and proximate result of this excessive force, Mr. Tummarello sustained a traumatic head injury, a severe concussion, and a 6-centimeter laceration to the left forehead.

17. Body-camera footage of the incident exists and is in the possession of the Quakertown Police Department and/or the Borough of Quakertown. Upon information and belief, the footage will confirm that Mr. Tummarello was cooperative and that the force used by the Defendant officers was excessive, unreasonable, and unjustified.

**C. Emergency Medical Treatment — St. Luke's Hospital**

18. Mr. Tummarello was transported to St. Luke's Hospital, Upper Bucks Campus, located at 3000 St. Luke's Drive, Quakertown, Pennsylvania 18951, for emergency treatment of his injuries.

19. Mr. Tummarello arrived at the Emergency Department at approximately 5:53 PM on June 4, 2025. Police officers were at the bedside during treatment.

20. Upon presentation, Mr. Tummarello reported that he had been "restrained by the police" and "struck his head on utility truck," resulting in a laceration to the left forehead. He complained of headache, dizziness, nausea, and neck pain.

21. Physical examination revealed a 6-centimeter laceration to the left forehead. Mr. Tummarello's vital signs showed elevated blood pressure of 139/87 mmHg and a pain score of 6 out of 10. His Glasgow Coma Scale score was 15.

22. Diagnostic imaging was performed, including a CT scan of the head without contrast and a CT scan of the cervical spine without contrast. The CT head revealed no acute intracranial abnormality but confirmed the left anterior frontal scalp laceration. The CT cervical spine showed no fracture or traumatic malalignment.

23. Joseph Perez, DO, performed a laceration repair using 11 sutures (5-0 nylon, running technique) to close the 6-centimeter forehead wound. Local anesthesia with lidocaine 1% with epinephrine was administered. Antibiotic ointment was applied.

24. Mr. Tummarello was discharged at approximately 8:44 PM in stable condition with instructions for suture removal in one week and follow-up care. The attending physician noted Mr. Tummarello could be medically cleared for incarceration.

**D. Bucks County Corrections Facility — Intake and Treatment**

25. Following his discharge from St. Luke's Hospital, Mr. Tummarello was transported to the Bucks County Corrections Facility, located at 1270 Almshouse Road, Doylestown, Pennsylvania 18901, where medical services are provided by PrimeCare Medical, Inc.

26. Upon intake at the corrections facility on June 5, 2025, Mr. Tummarello's injuries were documented; he presented with pain from a head injury sustained during an

encounter with police, with a laceration to the left side of the head requiring 11 stitches. His physical appearance was noted as disheveled.

27. As a direct and proximate result of the Defendant officers' excessive force and the resulting incarceration, Mr. Tummarello has suffered and continues to suffer from physical injuries, continual headaches, emotional distress, mental anguish, humiliation, and loss of liberty.

**E. Criminal Proceedings and Disposition**

28. Mr. Tummarello was charged with multiple offenses, including two counts of Retaliation Against Witness or Victim (18 Pa.C.S. § 4953(a)), three counts of Criminal Use of Communication Facility (18 Pa.C.S. § 7512(a)), four counts of Terroristic Threats With Intent to Terrorize Another (18 Pa.C.S. § 2706(a)(1)), and three counts of Harassment (18 Pa.C.S. § 2709(a)(4)).

29. The criminal charges were based entirely on a series of emails Mr. Tummarello sent prior to his arrest. The charges had no connection whatsoever to Mr. Tummarello's conduct during the arrest itself.

30. On September 30, 2025, before the Honorable Wallace H. Bateman, Jr., in the Court of Common Pleas of Bucks County, Docket No. CP-09-CR-0003276-2025, Mr. Tummarello entered a guilty plea to four counts of Terroristic Threats (18 Pa.C.S. § 2706(a)(1)) and three counts of Harassment (18 Pa.C.S. § 2709(a)(4)). The remaining charges, including both counts of Retaliation Against Witness or Victim and all three counts of Criminal Use of Communication Facility, were *nolle prossed*.

31. Mr. Tummarello was sentenced to a period of confinement of time served with a maximum of 23 months, followed by 36 months of consecutive probation on Count 6,

and 12 months of consecutive probation on Count 10. He received credit for time served from June 5, 2025.

32. Critically, Mr. Tummarello's convictions are based on pre-arrest conduct, specifically, threatening emails, and are entirely independent of the excessive force used against him during the arrest. The validity of his convictions is in no way called into question by this lawsuit.

**F. Municipal Liability — Pattern and Practice of Excessive Force**

33. The unconstitutional use of excessive force against Mr. Tummarello was not an isolated incident. Rather, it was the product of the Borough of Quakertown's policies, customs, practices, and/or deliberate indifference to the constitutional rights of persons who come into contact with the Quakertown Police Department.

34. Upon information and belief, the Borough of Quakertown and the Quakertown Police Department have a pattern, practice, and custom of using excessive force against individuals during arrests, even when those individuals are cooperating and pose no threat to officer safety.

35. The Borough of Quakertown has been deliberately indifferent to the need to properly train, supervise, and discipline its officers regarding the constitutional limitations on the use of force. The Borough's failure to adequately train its officers is so deficient that it amounts to deliberate indifference to the rights of persons with whom those officers come into contact.

36. The Borough of Quakertown has failed to implement adequate policies and procedures to prevent the use of excessive force, to properly investigate complaints of excessive force, and to discipline officers who engage in unconstitutional conduct.

7

37. The Borough's failures were the moving force behind the constitutional violations suffered by Mr. Tummarello.

### COUNT I

**Excessive Force in Violation of the Fourth Amendment**

(42 U.S.C. § 1983 — Against Defendant Officer John Doe)

38. Plaintiff incorporates by reference all prior paragraphs as though fully set forth herein.

39. The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, protects individuals from the use of excessive force by law enforcement officers during an arrest, investigatory stop, or other seizure of a free citizen.

40. Under the standard articulated by the Supreme Court in *Graham v. Connor*, 490 U.S. 386 (1989), the use of force must be objectively reasonable in light of the totality of the circumstances, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight.

41. Mr. Tummarello was cooperative at the time of the arrest. He did not resist. He did not attempt to flee. He did not pose an immediate threat to the safety of the officers or anyone else.

42. Despite Mr. Tummarello's compliance, Defendant officers forcefully slammed him into the side of an electrical utility truck, and one officer pressed his forearm against Mr. Tummarello's head and drove his skull into the metal surface of the vehicle.

43. This force was objectively unreasonable, excessive, unnecessary, and constitutionally impermissible under the circumstances.

44. As a direct and proximate result of the Defendant officers' use of excessive force, Mr. Tummarello suffered a traumatic head injury, a 6-centimeter forehead laceration requiring 11 sutures, headache, dizziness, nausea, neck pain, emotional distress, mental anguish, and ongoing physical, mental, and emotional symptoms consistent with a brain injury.

45. This claim does not run afoul of the *Heck* doctrine. Under *Heck v. Humphrey*, 512 U.S. 477 (1994), a § 1983 claim is barred only when a judgment in favor of the plaintiff would *necessarily imply the invalidity* of a prior criminal conviction. The *Heck* bar applies only where success on the civil claim is logically incompatible with the conviction.

46. Mr. Tummarello's excessive force claim is fully compatible with his guilty plea. The claim challenges the manner in which officers effectuated his arrest; specifically, the gratuitous and disproportionate physical force inflicted upon him, not the validity of the underlying charges or convictions.

47. Mr. Tummarello's convictions for terroristic threats (18 Pa.C.S. § 2706(a)(1)) and harassment (18 Pa.C.S. § 2709(a)(4)) are based entirely on pre-arrest conduct, namely, threatening emails sent prior to June 4, 2025. These convictions are wholly unrelated to Mr. Tummarello's conduct during the arrest or to the officers' use of force against him. A finding that the officers used excessive force does not in any way negate, undermine, or call into question the factual basis for Mr. Tummarello's guilty plea.

9

48. The Third Circuit has consistently held that excessive force claims are not barred by *Heck* where the force used is independent of the elements of the underlying offense. See *Garrison v. Porch*, 767 F. App'x 280 (3d Cir. 2019). A person may be guilty of a criminal offense and simultaneously be the victim of constitutionally excessive force during the arrest for that offense. The two inquiries are entirely distinct.

49. Furthermore, the Supreme Court in *Graham v. Connor* expressly recognized that the reasonableness of force used during an arrest is evaluated independently of the suspect's guilt or innocence. The Fourth Amendment's objective reasonableness standard applies regardless of whether the arrestee is ultimately convicted. 490 U.S. at 396-97.

50. Accordingly, this excessive force claim does not necessarily imply the invalidity of any of Mr. Tummarello's convictions, and the *Heck* doctrine poses no bar to this action.

51. The Defendant officers acted willfully, maliciously, and with reckless disregard for Mr. Tummarello's constitutional rights, entitling Plaintiff to compensatory and punitive damages.

## COUNT II

**Municipal Liability Under *Monell v. Department of Social Services***

(42 U.S.C. § 1983 — Against Borough of Quakertown)

52. Plaintiff incorporates by reference all prior paragraphs as though fully set forth herein.

53. Under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), a municipality may be held liable under § 1983 when the execution of a government's policy or custom inflicts injury upon a plaintiff.

54. The Borough of Quakertown maintained and enforced policies, customs, and/or practices that were the moving force behind the excessive force used against Mr. Tummarello, including but not limited to:

- A policy, custom, or practice of using excessive and unreasonable force against individuals during arrests, including against cooperative and non-resistant individuals;

- A failure to adequately train officers on the constitutional limitations governing the use of force during arrests, as required by the Fourth Amendment and *Graham v. Connor*;

- A failure to adequately supervise officers to ensure compliance with constitutional standards regarding the use of force;

- A failure to investigate and discipline officers who engage in unconstitutional uses of force;

- A policy, custom, or practice of deliberate indifference to the known and obvious risk that officers would use excessive force against persons with whom they come into contact.

55. The pattern of excessive force by the Quakertown Police Department is evidenced by, among other things, the February 20, 2026, incident in which QPD Chief of Police Scott McElree personally used excessive force against minors during a student protest, placing a 15-year-old girl in a chokehold. This incident, committed by the

11

department's highest-ranking officer, demonstrates that the use of unconstitutional force is not an aberration but a reflection of department-wide culture, custom, and practice.

56. The need for training and supervision in the proper use of force was so obvious, and the inadequacy of existing training and supervision so likely to result in constitutional violations, that the Borough's failure to act constituted deliberate indifference to the rights of persons who encounter QPD officers. See *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

57. The Borough's unconstitutional policies, customs, practices, and failures were the moving force behind the deprivation of Mr. Tummarello's constitutional rights.

### DAMAGES

58. As a direct and proximate result of Defendants' actions, Mr. Tummarello has suffered and continues to suffer the following damages:

- A traumatic head injury and brain injury with ongoing physical, mental, and emotional symptoms;

- A 6-centimeter forehead laceration requiring 11 sutures, resulting in permanent scarring and disfigurement;

- A severe concussion;

- Headache, dizziness, nausea, and neck pain;

- Emotional distress, mental anguish, humiliation, anxiety, depression, and feelings of hopelessness;

- Pain and suffering, both past and future;

- Loss of enjoyment of life;

12

- Such other damages as may be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Joseph D. Tummarello respectfully requests that this Honorable

Court enter judgment in his favor and against Defendants, and award the following relief:

a. Compensatory damages in an amount to be determined at trial, including but not

limited to damages for physical injuries, pain and suffering, emotional distress, medical

expenses, and loss of enjoyment of life;

b. Punitive damages against each individual Defendant officer in an amount sufficient to

punish and deter future unconstitutional conduct;

c. Reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988;

d. Pre-judgment and post-judgment interest as permitted by law;

e. Declaratory relief declaring that the Defendants' actions violated Plaintiff's rights

under the Fourth and Fourteenth Amendments to the United States Constitution;

f. Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the

Federal Rules of Civil Procedure.

Respectfully submitted,

/s Brian J. Zeiger
Brian Zeiger, Esquire
Identification No. 87063
LEVIN & ZEIGER, LLP
1500 JFK BOULEVARD, Suite 620
Philadelphia, Pennsylvania 19102
(215) 546-0340

13

Counsel for Plaintiff